IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN M. WOOMER, | : | CIVIL ACTION NO. **1:CV-04-1386** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g). The Plaintiff, Susan Woomer, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433.

## I. PROCEDURAL HISTORY.

The Plaintiff filed an application for DIB on March 22, 1999, alleging an inability to work since November 24, 1997, due to three disc bulges and fibromyalgia. (R. 83). Her claim was denied initially, and a timely request for reconsideration was filed. (R. 57). On June 10, 1999, Plaintiff's request for reconsideration was denied. (R. 59). Thereafter, Plaintiff filed a request for a hearing. (R. 67). A hearing was conducted before an Administrative Law Judge ("ALJ") on December 7, 1999. (R. 12). Plaintiff was denied benefits pursuant to the ALJ's decision of February 25, 2000. (R. 12-18). The Plaintiff requested review of the ALJ's decision by the Appeals Council. Said request for review was denied on June 28, 2001 (R. 5-7), thereby making the ALJ's decision

the "final decision" of the Commissioner.  42 U.S.C. § 405(g).

Plaintiff then filed a complaint in the United States District Court for the Middle District of Pennsylvania, No. 3:CV-01-1607.  The matter was referred to Magistrate Judge Mannion who, on January 7, 2003, issued a Report and Recommendation which recommended that the case be remanded for further proceedings.  (R. 535-552).  This Report and Recommendation was adopted by Judge Conaboy on February 3, 2003.

On December 4, 2003, another hearing was held before an ALJ.  (R. 460).  Plaintiff was again denied benefits pursuant to the ALJ's decision of December 19, 2003.  (R. 470).  Plaintiff's request for review was denied by the Appeals Council on May 19, 2004 (R. 445-446), thereby making the ALJ's decision of December 19, 2003, the "final decision" of the Commissioner.  That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 9 & 11).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security Disability Insurance benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389,

401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or

3

combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 470). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date. (R. 469). Further, the ALJ determined that the medical evidence establishes that Plaintiff's cervical disc disease, cervalgia, fibromyalgia, myalgias, myositis, a dysthymic/depressive disorder, and a panic disorder are severe impairments within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 13, 17). Additionally, the ALJ determined that the medical evidence shows Plaintiff is "status post excision

4

of a benign fibrosing process of the right thigh," but that this impairment was not severe  because it had only a minimal impact on her ability to perform work-related activities.  (R. 469).

The ALJ noted that Plaintiff's allegations regarding her limitations and pain are not totally credible. (R. 469 @ ¶ 4).  When assessing her residual functional capacity, the ALJ  found that Plaintiff's limitations prevented her from performing "the full range of light work." (R. 470 @ ¶ 12.). The ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (R. 470 @ ¶ 6).  Thus, the ALJ found that the Plaintiff met her burden in Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(f), 416.920(f).  The final and fifth step requires an analysis of whether the Plaintiff, based on her age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy.  *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428.  In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments.  20 C.F.R. § 404.1523; *Plummer, supra*.  Based on the testimony of an impartial vocational expert, the ALJ concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity ("RFC"), she is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (R. 470 @ ¶ 12).

Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and limitations could work as a small products assembler, bagger/packer, clerical general office clerk/helper and office mail clerk. (R. 468). Thus, Plaintiff was found to be not disabled. (R. 470).

The relevant time period for this case is November 24, 1997 (alleged onset date of disability) ( R. 83), through March 31, 2003 (date Plaintiff was last insured). (R. 18).

## IV.   DISCUSSION.

This appeal involves the denial of Plaintiff's application for DIB. Plaintiff filed an application for DIB on March 22, 1999, which was denied on February 25, 2000, by the decision of an ALJ. Thereafter, a civil action was filed by Plaintiff against the Commissioner which resulted in the case being remanded for further proceedings.  On remand, Plaintiff's application for DIB was again denied by decision of an ALJ on December 19, 2003.  The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled. It was determined that the Plaintiff was insured for DIB through March 31, 2003. Thus, Plaintiff had to show that she was disabled on or before March 31, 2003. (R. 469).

While the ALJ found that the Plaintiff had severe impairments (R. 469 @ ¶ 3.), he determined that the impairments did not meet or medically equal any listed impairment. (R. 469 @ ¶ 3.). Essentially, the Plaintiff contends the ALJ erred in that he failed to comply with Magistrate Judge Mannion's report/recommendations; failed to give appropriate weight to Plaintiff's treating physicians; mischaracterized the evidence of record; and did not give adequate weight to Plaintiff's testimony. (Doc. 9, p. 3).

6

**A.  Background**

The Plaintiff was born on December 10, 1959.  (R. 83).  She was 43 years old on her date last insured.  (R. 461).  Thus, Plaintiff is a younger individual under the Regulations. (R. 18).  *See* 20 C.F.R. § 404.1563(c).  She has a high school education (R. 470 @ ¶ 9), and transferability of skills from her past relevant work is not an issue.  (R. 470 @ ¶ 10).  The Plaintiff has not been engaged in substantial gainful activity since her alleged onset date of November 24, 1997.  (R. 469 @ ¶ 2.). The ALJ found that the Plaintiff could not perform any of her past relevant work.  (R. 470 @ ¶ 6). The Plaintiff alleges that she is unable to work because of bulging discs, fibromyalgia, and polymyalgia.  (R. 83).  It was determined that Plaintiff had severe impairments consisting of cervical disc disease, cervalgia, fibromyalgia, myalgias, myositis, a dysthymic/depressive disorder, and a panic disorder.  (R. 469 @ ¶ 3).  The ALJ also found that Plaintiff was "status post excision of a benign fibrosing process of the right thigh," but that this was not a severe impairment.  (R. 469 @ ¶ 3).  Further, the ALJ  found that the Plaintiff retained the residual functional capacity to engage in a significant range of light work activity.[1]  Finding that a significant number of such jobs exist in the national economy based on the testimony of a vocational expert ("VE") at the hearing[2], the ALJ

---

[1]      (b) *Light work.*   Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and puling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §404.1567 (b).

[2] The ALJ stated Ms. Tanya F. Williams was the Vocational Expert.  (R. 460).

held that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 470).

### B. Medical Evidence

On appeal, Plaintiff makes the general assertion that the ALJ erred in finding that she could perform light work because the decision is not supported by substantial evidence.  Specifically, the Plaintiff contends the ALJ erred in that he failed to comply with Magistrate Judge Mannion's report/recommendations, failed to give appropriate weight to Plaintiff's treating physicians, mischaracterized the evidence of record, and did not give adequate weight to Plaintiff's testimony. (Doc. 9, p. 3).

Plaintiff's medical history for the time period spanning January 1994 through February 25, 2000,[3] has been thoroughly addressed in Magistrate Judge Mannion's Report and Recommendation and will not be reiterated here.  (R. 535-552).   We will discuss Plaintiff's medical history from February 26, 2000, through December 19, 2003, the date of the ALJ's second denial of Plaintiff's claim for DIB.

Medical records provided by Matthew Bossert, D.C., for the time period of April 2000, through March 2003, do not show anything remarkable.  Plaintiff saw Dr. Bossert at least once, sometimes twice a week throughout the time period.  (R. 808-1031).  Dr. Bossert's diagnoses for Plaintiff in April 2003 were Cervicalgia, displacement of cervical intervertebral disc without myelopathy, pain in the thoracic spine, and low back pain.  (R. 1031).  These diagnoses remained unchanged for each visit until June 2001.  (R. 938-1031).  From June of 2001 through March 2003,

---

[3] Plaintiff testified that her health problems stem from a sledding accident which occured in January of 1994.  (R. 27). February 25, 2000, is the date of the ALJ's first decision.  (R. 18).

Dr. Bossert consistently documented Plaintiff's diagnoses as Cervicalgia, headache, displacement of cervical intervertebral disc without myelopathy, and closed dislocation, cervical vertebra. (808-938).   At each visit, Dr. Bossert would perform trigger point treatments in Plaintiff's area of discomfort.   (808-1031).   Dr. Bossert's notes indicate that Plaintiff had days where she felt her condition had improved and days when she felt it had become worse.   (808-1031).

Plaintiff was also treated by Francis M. Powers, Jr., M.D., of The Powers Clinic, from August 2001, through February 2003.   (R. 771-807).   Dr. Powers determined that Plaintiff suffered from fibromyalgia, chronic fatigue, multiple disc problems in the cervical thoracic spine, and status post hysterectomy.   (R. 780).   On April 3, 2002 Dr. Powers noted that Plaintiff was doing "reasonably well," but continued to have a "poor energy level."   (R. 776).   One month later, on June 5, 2002, Dr. Powers again noted that Plaintiff was "functioning reasonably well and can take care of herself and her daughter."   (R. 775).   On August 7, 2002, Dr. Powers reported that Plaintiff, while usually "wiped out" by 3:00 PM to 5:00 PM, is otherwise able to function "reasonably well."   (R .774).

On April 16, 2003, Peter Rao, M.D., completed a Disability Examination for the Pennsylvania Bureau of Disability Determination.   (R. 1086).   Dr. Rao conducted an interview and examination with Plaintiff.   (R. 1086).   Dr. Rao noted in his report that Plaintiff was "casually dressed" and "properly groomed."   (R. 1087).   Thereafter, Dr. Rao completed a Medical Assessment of Ability to do Work-Related Activities.   (R. 1089).   Dr. Rao opined that Plaintiff had "good" ability to follow work rules, relate to co-workers, deal with the public, use judgment, function independently, and maintain concentration.   (R. 1090).   Dr. Rao further determined that Plaintiff had "good" ability to understand and carry out complex instructions, and had "very good" ability

to carry out detailed and/or simple instructions. (R. 1090). Finally, Dr. Rao reported that Plaintiff had "good" ability to maintain personal appearance, behave in an emotionally stable manner, and demonstrate reliability. (R. 1091).

On June 18, 2003, Nancy Quintero, D.O., completed a Medical Assessment of Ability to do Work-Related Activities for Plaintiff. (R. 1093-1096). Dr. Quintero, before making her findings, had an opportunity to review Plaintiff's chart and interview her. (R. 1096). Dr. Quintero determined that Plaintiff's impairments did not affect standing, walking, or sitting. (R. 1094). Dr. Quintero also reported that Plaintiff was able to climb, kneel, and crouch on an occasional basis, and stoop, balance, and crawl on a frequent basis. (R10-94). Dr. Quintero further determined that Plaintiff's impairments did not affect sight, feel, handling, speaking, reaching, hearing, pushing or pulling. (R. 1095).

On April 25, 2003, Rudy Nicolas, M.D., reported on the findings of an MRI which Plaintiff underwent on March 3, 2003. (R. 1097). Dr. Nicolas noted "there is a suggestoin of a very faint T2 and proton density hyperintensity in the right side of the spinal cord at the level C1. (R. 1097). Dr. Nicolas also noted that there was disc degeneration of C5-C6 and C6-C7 with "circumferential disc bulging at these levels and associated foraminal stenosis." (R. 1097). Dr. Nicolas finally noted that there "could be minimal disc bulge at C4-C5 and that there was no disc bulging at C2-C3." (R. 1097).

On January 15, 2003, James Perruquet, M.D., completed a medical report for the Pennsylvania State Employees' Retirement system concerning Plaintiff. (R. 1105). Dr. Perruquet diagnosed Plaintiff with Fibromyalgia and opined that her condition impairs her ability to function.

(R. 1105).

On January 27, 2003, Dr. Poesnecker, D.C., also completed a medical report for the Pennsylvania State Employees' Retirement system concerning Plaintiff. (1098). Dr. Poesnecker opined that Plaintiff's conditions, which he/she determined to be chronic fatigue syndrome, fibromyalgia impaired immune system and cervical arm-shoulder syndrome, rendered her "unable to perform the duties required by any full time employment."

On February 14, 2003, Matthew Bossert, D.C., completed a similar report and also opined that Plaintiff was "unable to perform the duties required for employment." (R. 1103).

On July 28, 2003, Antonio Buendia, M.D., noted the results of an MRI of Plaintiff's lumbar spine. (R. 1112). Dr. Buendia reported that there was no significant spondylosis seen and that the vertebral bodies and disc spaces were preserved. (R. 1112). Dr. Buendia further noted small Schmorl's nodes at L1 and L2. (R. 1112). Finally, Dr. Buendia reported that there was no disc herniation or spinal stenosis seen and that the MRI of the lumbar spine was "essentially normal." (R. 1112).

On April 9, 2003, Plaintiff was examined by Kevin Parry, M.D. (R. 1113). Dr. Parry reported that Plaintiff, neurologically speaking, was "absolutely normal with good strength." (R. 1113). Dr. Parry suggested that "99.9% of this is most likely fibromyalgia." Dr. Parry suggested that Plaintiff begin using Celexa, an antidepressant, to help her deal with the fibromyalgia. (R. 1113).

### C. Vocational Expert.

Plaintiff was 43 years old on the date last insured, with a high school education. (R. 470). She last worked as an administrative assistant, which is classified as light, semi-skilled work. (R.

468).   The transferability of skills was not an issue.   (R. 470).   The ALJ then asked the VE the

following hypothetical question:

> If you would consider a hypothetical individual of the
> Claimant's age, education and work experience whose
> maximum sustained work capability is no more than light work
> as you've discussed that, is further limited to no more than
> occasional – by occasional I mean less than 1/3 of the time
> cumulatively during an eight hour work day– so no more than
> occasional climbing, balancing, stooping, kneeling, crouching
> or crawling, unbalance you don't crouch or crawl, in you
> professional opinion, could such a person perform the
> Claimant's past occupation either as she performed it or as it's
> customarily done in the national economy and if not, why not?

(R. 522).

The VE answered yes, that a hypothetical person as described could perform Plaintiff's

past occupation, both as she performed it and as classified.  (R. 522).  The ALJ then asked:

> If there is an additional limitation that concentration is
> reduced such that the individual's capable of performing no
> more than simple, repetitive , routine tasks, could such a
> person perform the past occupation?

(R. 522).

The VE answered "no," that such a person would not be able to perform Plaintiff's past

occupation.  (R. 523).  The ALJ then asked:

> Using the second hypothetical–which is the first, plus the no
> more than simple, repetitive routing tasks–using that second
> hypothetical, are you able to suggest unskilled entry
> competitive light and sedentary occupations that such a person
> could perform?

(R. 523).

The VE testified that there was a significant number of jobs in the national and regional

economies which an individual of Plaintiff's age, education, and experience and with Plaintiff's

limitations could perform.  (R. 523).

The ALJ found that Plaintiff had severe impairments consisting of cervical disc disease, cervalgia, fibromyalgia, myalgias, myositis, a dysthymic/depressive disorder, and a panic disorder. (R. 469 @ ¶ 3).  The ALJ also found that Plaintiff was "status post excision of a benign fibrosing process of the right thigh," but that this was not a severe impairment.  (R. 469 @ ¶ 3).  Thus, the ALJ found that Plaintiff was able to perform a significant range of light work.  We do not agree that this finding was supported by substantial evidence in light of the medical record as discussed above.

### D. Analysis

#### Claim I

Plaintiff contends that the ALJ erred by failing to give appropriate weight to the opinions of her treating physicians.  (Doc. 9, p. 7).  The ALJ considered the determinations and opinions of Plaintiff's treating physicians Dr. Passarelli, Dr. Bossert, Dr. Poesnecker, Dr. Powers, and Dr. Perruquet.  (R. 476).  However, the ALJ found that the opinions of the aforementioned were inconsistent with the clinical and objective findings of record.  (R. 467).

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3rd Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987));  *see also  Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988); *Brewster,*

> 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186 F.3d at 429 (*citing  Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See  Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);  *Kent*, 710 F.2d at 115.

*Id*. at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. §416.927(d)(2).  When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered.  The Regulations state: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."  20 C.F.R.  §416.927(d)(2)(I). Additionally, the nature and extent of the treatment relationship is considered. The Regulations state: "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or

ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain.  When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R.  §416.927(d)(2)(ii).

Furthermore, "a chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight." *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999).  Rather, a chiropractor's opinion may be considered by the ALJ "insofar as it is deemed relevant to assessing a claimant's disability." *Id.*

Matthew Bossert, D.C., and G.E. Poesnecker, D.C., both opined, in their respective Pennsylvania State Employees Retirement System reports, that Plaintiff was not able to work.  (R. 1099, 1103).  While these are the opinions of chiropractors which are not "acceptable medical sources" entitled to controlling weight, they are, nonetheless, relevant in the instant matter and worthy of consideration.

Dr. Perruquet, in his Pennsylvania State Employees Retirement System report for Plaintiff, noted that all classic fibromyalgia tender points were positive for tenderness.  (R. 1104).  Dr. Perruquet also noted that Plaintiff's joints had full range of motion and no synovitis.

The ALJ disregarded the opinions of Plaintiff's treating chiropractors because they were "not acceptable sources;" simply ignored Dr. Powers' opinion; and glossed over Dr. Perruquet's finding that Plaintiff had tenderness in all 18 classic fibromyalgia tender points by merely pointing out that

Plaintiff had full range of motion and good strength. (R. 467). The ALJ points to a Medical Source Statement completed by Dr. Quintero, which suggests that Plaintiff had no significant limitations, to support his decision. (R. 467, 1093-1096).

In the instant matter, we find that the opinions of Plaintiff's chiropractor's, while not to be given controlling weight, are relevant and should have been given more consideration. Plaintiff treated with Dr. Passarelli once every three weeks from August, 1995, through February, 1999. (R. 259). Similarly, Dr. Bossert treated Plaintiff twice a week between April, 2000, and March, 2003. (R. 809-1031). Throughout this period Dr. Passarelli and Dr. Bossert treated Plaintiff for pain in her neck and back. *Id.* We note that Dr. Bossert has stated that he did not feel comfortable giving a residual functional capacity assessment; however, that does not render his opinions regarding Plaintiff's conditions unworthy of any consideration. Likewise, the determination by Dr. Passarelli that Plaintiff's condition would be exacerbated by a return to her job is also not given controlling weight but, nonetheless, should still be considered to some degree. (R. 260).

The ALJ also summarily dismissed the opinion of Dr. Poesnecker, who opined that Plaintiff could not engage in full-time employment, because he too was a chiropractor. (R. 467). Dr. Poesnecker treated Plaintiff from June, 2002, through September, 2002. (R. 1098). While Dr. Poesnecker's treatment of Plaintiff was not nearly as extensive as that of Dr. Bossert and Dr. Passarelli, some consideration should be given to his opinion.

Furthermore, Francis Powers, Jr., M.D., also opined that Plaintiff could not have "consistent health to function in a regular job." (R. 1115). Plaintiff treated with Dr. Powers multiple times per year between August, 2001, and October, 2003. (R. 771-780, 1115-1116, 1129-1131). Dr.

16

Powers consistently noted that Plaintiff's condition was poor and not getting better.

We find Dr. Powers' determination that Plaintiff "cannot have consistent enough health to function in a regular job" to be quite significant and worthy of consideration. (R. 1115). Dr. Powers saw Plaintiff several times between August, 2001, and October, 2003. (R. 771-780, 1115, 1116, 1130, 1131). Dr. Powers is not a chiropractor, and we find no reason why his opinion was ignored.

Additionally, Dr. Perruquet, in his Pennsylvania State Employees Retirement System report for Plaintiff, noted that all classic fibromyalgia tender points were positive for tenderness. (R. 1104).

We find it troubling that the ALJ ignored Dr. Perruquet's finding that Plaintiff had tenderness at each of the 18 classic fibromyalgia tender points. (R. 1104). The ALJ only points out that Plaintiff has full range of motion in her joints as well as good strength. The ALJ sidesteps the more pertinent finding by Dr. Perruquet, that being that Plaintiff has tenderness in all 18 classic tender points. Tenderness in these spots speaks more directly to Plaintiff's condition than does a finding that Plaintiff has full range of motion in her joints and good strength. _See_ www.fmaware.org.

The ALJ points to Dr. Quintero's report, which suggests Plaintiff had no significant limitations, to refute the opinions of Plaintiff's treating physician. (R. 467). Dr. Quintero completed her report after a single examination of Plaintiff. (R. 1096). Dr. Quintero opined that Plaintiff had no limitation in standing, walking, sitting, lifting, or carrying. (R. 1093-1094). Dr. Quintero also suggested that Plaintiff could frequently stoop, balance, and crawl, and, occasionally climb, kneel, and crouch over the course of an eight-hour work day. (R . 1094). Dr. Quintero further opined that Plaintiff had no limitation on seeing, feeling, handling, speaking, reaching, hearing, pushing,

and pulling.  (R. 1095).  As for environmental restrictions, Dr. Quintero determined that Plaintiff's only limitations were moving machinery, vibration, and extreme temperatures.  (R. 1095).

The ALJ also pointed to the non-treating state agency medical consultants, who both opined that Plaintiff had no significant limitations.  (R. 354-361, 380-387).  These reports were completed in April, 1999, and June, 1999.  *Id.*  The reports are virtually identical, and both suggest that Plaintiff can frequently lift fifty pounds and can stand, walk or sit for six hours in an eight-hour work day.  (R. 355, 381).   Both reports also suggest that Plaintiff has no postural, manipulative, visual, communicative, or environmental limitations.  (R. 355-358, 381-384).

The stark divergences in the opinions of Plaintiff's treating physicians and the opinions of the non-treating physicians are of concern for the Court.  This case was initially remanded so that residual functional capacity assessments could be performed by Plaintiff's treating physicians.  (R. 549).  Plaintiff's treating physicians have all opined, at various times and on various forms, that Plaintiff's conditions render her unable to work.  However, no comprehensive residual functional capacity assessments accompany these determinations made by Plaintiff's treating physicians.  We find that the consistency of the opinions of Plaintiff's treating physicians prevents a finding that the ALJ's decision was supported by substantial evidence.  However, the findings of the non-examining physicians, coupled with various other pieces of information contained in the record, particularly Plaintiff's ability to ride a four wheeler, play in the pool, and author two documents of significant length in support of her position, prevent this Court from finding that Plaintiff is disabled.  (R. 815, 938).  Therefore, we recommend that this case be remanded so that residual functional capacity assessments by Plaintiff's treating physicians can be completed and considered.

18

**V.  Recommendation.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the

ALJ's decision be granted to the extent that this case be remanded for further consideration.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 28, 2005**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN M. WOOMER, | : | CIVIL ACTION NO. **1:CV-04-1386** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 28, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings

20

or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/ Thomas M. Blewitt**

**THOMAS M. BLEWITT**

**United States Magistrate Judge**

**Dated: June 28, 2005**